# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TIMOTHY ECKBERG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05 C 3725 |
| ) | |
| LIEBHERR CRAWLER CRANE ) | Judge John W. Darrah |
| COMPANY; LIEBHERR-WERK ) | |
| NENZING GmbH; AMERICAN STATES ) | |
| EQUIPMENT CO.; and HYMER- ) | |
| LEICHMETTALBAU GmbH + Co. KG, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Timothy Eckberg, filed suit, alleging both strict liability and negligence, against each of the Defendants, Liebherr Crawler Crane Company and Liebherr-Werk Nenzing GmbH ("Liebherr Defendants"), American States Equipment Co. ("American States"), and Hymer-Leichmettalbau GmbH + Co. KG ("Hymer"). Currently before the Court is Hymer's Motion to Dismiss for Lack of Personal Jurisdiction.

### BACKGROUND

Eckberg is a citizen of the State of Illinois. On December 3, 2004, Eckberg was climbing up an aluminum ladder, when the ladder snapped, causing him to fall and sustain injuries. The aluminum ladder in question was allegedly designed and manufactured by Hymer in Germany and then distributed by Hymer either to the Liebherr Defendants in Austria or, as Eckberg claims, directly into the state of Wisconsin. In any event, the ladder found its way to a Wisconsin warehouse owned by American States. The ladder, later attached by American States to a crane manufactured by the Liebherr Defendants, caused Eckberg's injuries in Illinois.

Hymer is a German corporation, organized under the laws of the Republic of Germany, with its principal place of business in Germany. Hymer manufactures ladders and other aluminum products in Germany and then distributes its products exclusively within Europe. Eckberg has not shown Hymer to have ever directly exported to the United States, although it has shown that five of Hymer's ladders, not including the ladder in question, are within the United States, including four in Illinois. Hymer has produced an affidavit, stating that it does not directly export any of its products to the United States. Hymer has never been licensed or registered to do business in Illinois or any other of the United States. Hymer has never marketed its products in Illinois, solicited or transacted any business in Illinois, entered into any contracts in Illinois, possessed any property or other assets in Illinois, or had a registered agent for the service of process in Illinois. Hymer maintains an informational internet web site, which cannot be used to make sales.

## ANALYSIS

Hymer argues that this Court lacks personal jurisdiction and, accordingly, has filed a motion to dismiss for lack of personal jurisdiction. Both parties have submitted written materials for a determination of this issue. *See* Fed. R. Civ. P. 12(b)(2). Where personal jurisdiction is challenged by a defendant, the plaintiff bears the burden of demonstrating its existence. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997) (*RAR*). "When [a] district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing, . . . the plaintiff 'need only make out a *prima facie* case of personal jurisdiction.'" *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003), *quoting Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). A court may look to affidavits and exhibits submitted by each party in determining

whether jurisdiction exists. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987) (*Turnock*). The allegations in the complaint are taken as true unless controverted by the defendants' affidavits, and any conflicts in the affidavits submitted by the parties are resolved in favor of the plaintiff. *See Berthold Types Ltd. v. European Mikrograph Corp.*, 102 F. Supp. 2d 928 (N.D. Ill. 2000), citing *Turnock*, 816 F.2d at 333.

A federal district court in Illinois has jurisdiction over a non-resident defendant only if an Illinois state court would have jurisdiction over that defendant. *See RAR*, 107 F.3d at 1275. A plaintiff must also show that the exercise of personal jurisdiction over the defendant comports with due process under the Fourteenth Amendment of the United States Constitution. *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 833–34 (N.D. Ill. 2000) (*Euromarket*).

The Illinois long-arm statute provides a list of specific acts that serve to submit the actor to the personal jurisdiction of the state's courts. 735 ILCS § 5/2-209(a). All parties agree that only one subsection within this portion of the long-arm statute is applicable in this instance, which provides that:

> (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts: . . . (2) The commission of a tortious act within this State; . . . on any other basis . . . permitted by the Illinois Constitution and the Constitution of the United States

735 ILCS § 5/2-209(a)(2). Because of this broad language, "the statutory analysis collapses into a due process inquiry, and [the court] need not consider whether the defendants engaged in any of the acts enumerated in the long-arm statute." *Euromarket*, 96 F. Supp. 2d at 834, *quoting LFG, LLC. v. Zapata Corp.*, 78 F. Supp. 2d 731, 735 (N.D. Ill. 1999). An Illinois federal district

court need only show that the Fourteenth Amendment's due process requirement is satisfied in order to exercise personal jurisdiction over a non-resident defendant. *Euromarket*, 96 F. Supp. 2d at 834.

A plaintiff can assert either general or specific personal jurisdiction over a non-resident defendant. *RAR*, 107 F.3d at1277. "General jurisdiction is for suits neither arising out of nor related to the defendant's contacts, and it is permitted only where the defendant has 'continuous and systematic general business contact' with the forum state." *RAR*, 107 F.3d at 1277. Specific jurisdiction "refers to jurisdiction over a defendant in a suit 'arising out of or related to the defendant's contact with the forum.'" *RAR*, 107 F.3d at 1277, *quoting Helicopteros Nacionales de Columbia, S.A. v. Hall*, 486 U.S. 408 (1984). Both parties agree that the exercise of specific personal jurisdiction over Hymer, based on the alleged tort, is at issue here.

The Fourteenth Amendment Due Process Clause permits a court to exercise specific personal jurisdiction over a non-resident defendant only if the defendant has had "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), *quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940); *Neuman & Assoc. v. Florabelle Flowers*, 15 F.3d 721, 725 (7th Cir. 1994). In order to find such minimum contacts, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). When specifically applied to product liability cases, "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that [it] should

4

reasonably anticipate being haled into court there." *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (*World-Wide Volkswagon*). Random, fortuitous, or attenuated contacts are not sufficient to establish personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (*Burger King*).

Eckberg argues that for product liability actions under Illinois' long-arm statute, an injury caused within the State of Illinois as a result of a manufacturing defect must necessarily be related to a tortious act within the State, as "it is well established that for purposes of the Illinois 'long-arm' statute a tort is committed in the place where the injury occurs." *McBreen v. Beech Aircraft Corp.*, 543 F.2d 26, 28 (7th Cir. 1976), citing *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 435–36 (1961) (*Gray*). Hymer asserts that any tortious conduct in this case would have occurred outside of Illinois and should be tied to its alleged manufacture of the ladder and subsequent sale to the Liebherr Defendants. Hymer maintains that it had no knowledge of or control over the ladder's eventual relocation to the State of Illinois.

It is generally true that the State of Illinois considers the legal place of a wrong to be "where the last event takes place which is necessary to render the actor liable," even when the wrong arises from acts performed elsewhere, at the place of manufacture. *Gray*, 22 Ill.2d at 435; *Wise v. McNeil Pharmaceutical*, 2000 WL 246243 at *2 (N.D. Ill. Feb. 24, 2000). However, this general holding from *Gray* is not without qualification; "the 'tort' branch of the [Illinois] long-arm statute does not apply to persons all of whose acts occur out of state." *Vioski v. Calaveras Asbestos, Ltd.*, 929 F.2d 352, 353 (7th Cir. 1991) (*Vioski*), citing *Yates v. Munir*, 112 Ill. 2d 205 (1986). A company that manufactures and sells its products outside of Illinois cannot commit a tortious act in Illinois unless it can be shown to have "propelled its product into Illinois," which requires that the product be sold "anticipating that the [product] would [be shipped] to Illinois, or

that there was a high probability of [such an event occurring]." *Vioski*, 929 F.2d at 353. More succinctly, Illinois must be "the place of [both] the actual and intended injury." *Vioski*, 929 F.2d at 353.

Hymer has committed no tortious act within the State of Illinois that would bring it within the reach of Illinois' long-arm statute. Eckberg's allegation that Hymer must have shipped the ladder to American States in Wisconsin is directly controverted by Hymer's affidavit, and American States has never stated nor in any way indicated the ladder was shipped directly to its Wisconsin warehouse by Hymer. Even if Eckberg's conclusory statement were to be accepted as proof of a direct shipment by Hymer to Wisconsin, Eckberg has failed to show any meaningful connection between Hymer and the State of Illinois. Eckberg has alleged only that four of Hymer's ladders were attached to cranes and shipped to Illinois by another company and that Hymer shipped a fifth ladder to Wisconsin. All of Hymer's acts occurred outside of Illinois.

Even if Hymer did ship the ladder in question to Wisconsin, it would not have had reason to anticipate that the ladder would ever arrive in Illinois; and based upon the small number of its ladders that Eckberg claims to have been present in Illinois, it has not been shown that Hymer would have had reason to anticipate a high probability of the ladder's moving into Illinois. That four ladders out of thousands manufactured arrive in a particular location cannot be said to reflect a high probability this would occur. Hymer manufactured those four ladders in Germany and sold them to a company in Austria, without knowing for what purpose they were to be used. Accordingly, Hymer did not propel its product into Illinois.

Furthermore, Hymer did not deliver its products into the "stream of commerce." For product liability cases, it is settled that a state "does not exceed its power under the Due Process

Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagon*, 444 U.S. at 297–98, *citing Gray*, 22 Ill. 2d. The exact requirements of the "stream of commerce" theory have been left unsettled, however, by the competing interpretations of the theory endorsed by the plurality decision in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987) (*Asahi*). The narrower interpretation requires the plaintiff to show conduct by the defendant that indicates an intent to serve the forum State, emphasizing that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state." *Asahi*, 480 U.S. at 112. The broader interpretation requires no such showing of "additional conduct," reasoning that because the stream of commerce refers to "the regular and anticipated flow" of products into the forum State, the act of placing products into the stream serves as notice for the possibility of future lawsuits in the forum and renders superfluous any further showing of intent. *Asahi*, 480 U.S. at 117.

The Seventh Circuit has consistently chosen to interpret the "stream of commerce" theory broadly, explicitly declining to follow the narrower interpretation introduced in *Asahi*. *See Dehmlow v. Austin Fireworks*, 963 F.3 941, 947 (7th Cir. 1992); *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660 (7th Cir. 1986) (*Giotis*). In what is perhaps the most relevant passage supporting the broader application of the "stream of commerce" theory, the Seventh Circuit explained that "[a] seller at the head of a distribution network . . . satisfies the requisite foreseeability of due process where it 'delivers its products into the stream of commerce with the

expectation that [these products] will be purchased by consumers in the forum state.'" *Giotis*, 800 F.2d at 667, *citing Burger King*, 471 U.S. at 473.

This Court's exercise of specific personal jurisdiction over Hymer would not comport with the Due Process Clause, notwithstanding the Seventh Circuit's broad interpretation of the "stream of commerce" theory. Hymer's alleged contacts with the State of Illinois amount to nothing more than the random, fortuitous, or attenuated contacts that are insufficient to establish personal jurisdiction. The broad interpretation of the stream of commerce articulated by the Supreme Court in *Asahi* described the "stream of commerce" as a regular and anticipated flow of goods into the forum State; the regularity of shipment gives the manufacturer reason to believe it may be haled into court in the forum State. Eckberg has alleged only that five ladders, not including the ladder in question, can be found in the United States, including four in Illinois. He does not point to any *stream* of commerce that would suggest Hymer should have had reason to believe it would be haled into court in the State of Illinois. Hymer assumed its products were used primarily, if not exclusively, within the European continent and sold the ladders to the Liebherr Defendants in Austria, without knowing where or how they were to be used.

Eckberg has no better a claim for jurisdiction based upon Hymer's alleged direct shipment of the ladder in question into Wisconsin. Even if this inference is to be taken as true in light of Hymer's uncontroverted affidavit denying any direct shipment to the United States, this singular shipment cannot itself be considered a stream of commerce. In addition, the final sale in that scenario would have been to American States in Wisconsin. American States then unilaterally moved the ladder from its Wisconsin warehouse into the State of Illinois. Based upon these facts, Hymer neither directed the ladder towards Illinois nor purposely availed itself of the privilege of conducting activities within Illinois. *See World-Wide Volkswagon*, 444 U.S.

at 295–99 (holding that an injury suffered by a consumer in the forum State as a result of the consumer's unilateral act of bringing the defective product into the forum State was an isolated occurrence and could not serve as constitutional basis for personal jurisdiction over the manufacturer). This Court cannot exercise personal jurisdiction over Hymer because it does not have the requisite "minimum contacts" with the State of Illinois.

Even when a plaintiff has shown that a defendant has established contacts with the forum State sufficient to satisfy due process requirements, the exercise of personal jurisdiction over the defendant must still be deemed fair to the defendant. Relevant factors to be balanced against the burden on the defendant in determining the fairness of jurisdiction include: "the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagon*, 444 U.S. at 292 (internal citations omitted). There is no need to consider these factors in this case. Eckberg is unable to show that the Illinois' long-arm statute brings Hymer within the State's personal jurisdiction. Therefore, the exercise of personal jurisdiction over Hymer by this Court would necessarily offend "traditional notions of fair play and substantial justice."

## CONCLUSION

For the foregoing reasons, Hymer's Motion to Dismiss for Lack of Personal Jurisdiction is granted.

Dated: June 27, 2007

6-27-07

JOHN W. DARRAH
United States District Court Judge

9